**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 4228 |
| v. | ) ) | Magistrate Judge Susan E. Cox |
| SCRUB, INC., | ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

This is a civil rights case where the Equal Employment Opportunity Commission ("EEOC") claims defendant Scrub, Inc. ("Scrub") has engaged in a pattern of discrimination against a class of African Americans by failing to hire and recruit them due to their race. Presently before the Court are three motions in this case: (1) Scrub's motion to compel documents withheld under claims of privilege [dkt 58]; (2) Scrub's motion to compel documents relating to EEOC communications with potential claimants [dkt 60], and; (3) EEOC's motion for a protective order [dkt 95]. The motions are granted in part and denied in part, as outlined below.

**A.    Scrub's motion to compel documents withheld under claims of privilege [dkt 58]**

In this motion to compel, Scrub argues that EEOC has wrongly refused to produce certain documents contained in the EEOC's investigative file, specifically regarding its pre-suit investigation. Scrub claims EEOC is incorrectly asserting a claim of privilege under section 706(b) of Title VII (42 U.S.C. §2000e-5(b)), or, the government deliberative process privilege.

A bit of background on the process at EEOC is helpful in understanding how the distinction is made between discoverable documents and those that are generally protected by a privilege.

Documents that reflect "predecisional analysis" are generally those protected by the government deliberative process privilege. EEOC explains that before it issues a letter of determination in a case, an investigator (in this case, Luis Rodriguez) writes an investigative memorandum. Then EEOC issues a letter of determination when the agency finds reasonable cause for the allegations described in the underlying charge. EEOC will "conciliate," or, essentially engage in settlement negotiations after that letter of determination is issued. The litigation unit does not pursue litigation unless and until conciliation has been attempted. Because all communications made "prior to and as a part of an agency determination are protected from disclosure" EEOC argues that any document or communication during this period of time is protected.[1]

First, the statutory privilege that is asserted with respect to EEOC conciliations is found in section 2000e-5(b), which provides that:

> If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.* Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both.[2]

Similarly, addressing evidence obtained during an investigation of a discrimination charge, section 2000e-8(e) provides that:

> It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving

---

[1] *See U.S. v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993).
[2] 42 U.S.C. § 2000e-5(b)(emphasis added).

such information.[3]

Courts have explained that the purpose of the statute's prohibition on revealing statements or actions taken during the EEOC's conciliation process "is to promote the congressional policy favoring unlitigated resolution of employment discrimination claims."[4] Specifically, a co-sponsor of the Senate bill stated "[th]e maximum results from the voluntary approach will be achieved if the investigation and conciliation are carried on in privacy. If voluntary compliance with this title is not achieved, the dispute will be fully exposed to public view when a court suit is filed."[5]

As to the government deliberative process privilege, the rule exempts from disclosure documents that "reflect the deliberative or policy-making processes of governmental agencies."[6] The government claiming the privilege first has to comply with the formal requirements for asserting the privilege by: (1) having the department head make a formal claim of the privilege; (2) submitting a declaration outlining the reason for confidentiality; and (3) identifying and describing the documents falling within the privilege.[7] Then there is a two prong test used to determine if materials fall within the privilege: (1) the material must be predicisional or antecedent to the adoption of an agency policy; and (2) the material must be deliberative or actually related to how the policies were formulated.[8] If the privilege applies, a court may still order disclosure if the plaintiff demonstrates a "particularized need" that outweighs the defendant's need for confidentiality.[9]

---

[3] 42 U.S.C. § 2000e-8(e).
[4] *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 880-81 (5th Cir.1981); *see also Haykel v. G.F.L. Furniture Leasing Co.*, 76 F.R.D. 386, 392 (D.C.Ga.1976) (agreeing that conciliation negotiations should not be subject to discovery because it would "destroy the openness and informality of the conciliation process").
[5] *EEOC v. Dry Goods Corp.*, 449 U.S. 590, 600, n. 16, 101 S.Ct. 817 (quoting 110 Cong. Rec. 8193 (1964) (emphasis added)).
[6] *Brown v. U.S. Patent and Trandmark Office,* 355 F.Supp.2d 940, 942 (N.D. Ill. 2005).
[7] *K.L. v. Edgar,* 964 F.Supp. 1206, 1209 (N.D. Ill. 1997).
[8] *Brown,* 355 F.Supp.2d at 942.
[9] *See Sronkoski v. Schaumburg Sch. Dist., No. 54,* 2009 WL 1940779, *1 (N.D. Ill. July 1, 2009).

Here, Scrub attaches to its motion, as Exhibit A, its annotation of EEOC's privilege log. This document includes over 40 sets of documents that EEOC claims are privileged. The document also lists what privilege EEOC is asserting and whether Scrub disputes the EEOC's position (22 of those listed Scrub does not dispute). For example, a sampling of the documents in dispute include: an investigative memorandum prepared by EEOC's investigator, Mr. Rodriguez; calculations of gross payroll; calculations of "Scrub Shortfall"; handwritten notes by Mr. Rodriguez; and a draft charge against Scrub. With this list, Scrub believes that the Court can determine whether the privilege is properly asserted. If more is needed, however, Scrub requests the Court view the documents *in camera* to determine if the privilege has been rightly asserted.

As an initial matter, we must address Scrub's procedural argument that EEOC did not satisfy the requirements for asserting the privilege in the first place and, second, that it waived the privilege with respect to certain sets of documents because it asserted the privilege too late. In support, Scrub cites to *Pacific Gas & Electric Company v. The United States,* where the Court of Federal Claims found that there was no need to address whether the plaintiff had made a showing of need to overcome the qualified deliberative process privilege because it held that the defendant did not meet the threshold three-part test.[10]

> [T]he court's conclusion is based on the fact that defendant has failed to meet the procedural requirements for invoking the deliberative process privilege: first, defendant has failed to demonstrate that the privilege was properly invoked by an appropriate official; second, defendant has failed to "supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document[s]," [citation omitted] and third, defendant's affidavits supporting its assertions of the deliberative process privilege have been belatedly executed.[11]

---

[10] 70 Fed. Cl. 128 (2006).
[11] *Pacific Gas & Electric Co.,* 70 Fed. Cl. at 136-37.

Here, Scrub claims that because EEOC did not provide an affidavit from its Chair at the moment that EEOC invoked the privilege, it did not comply with the procedural requirements. EEOC has, in response to Scrub's motion, now filed an affidavit from its Acting Chairman, Stuart Ishimaru stating that he has personally reviewed the documents and found that they contain predecisional analysis, recommendations, opinions and conclusions of the EEOC's investigatory personnel.[12] EEOC also cites to *United States v. Board of Education of the City of Chicago,* where a district court in our Circuit - Judge Aspen - found that the first part of the three-part test was met, despite a late affidavit.[13] In that case, the court held that because the government official filed an affidavit, though "not doing so when he first claimed the privilege," the privilege was nonetheless formally invoked when the affidavit was filed during the course of the dispute.[14] This is enough for this Court to find EEOC's late affidavit sufficient. And because Scrub does not dispute the other two prongs of the procedural requirements - that EEOC outlined the reasons for confidentiality and identified the documents falling within the privilege - we find that EEOC has properly invoked the privilege.

We are also persuaded by EEOC's argument that it does not waive its privilege because it asserted the privilege for certain documents after giving Scrub a privilege log. As stated by EEOC, there is no statute of limitations for amending a privilege log. Apparently, though Scrub does not make this clear, EEOC produced documents on December 23, 2009 and then amended its privilege log on February 12, 2010 to assert the government deliberative process privilege. To support its claim for waiver, Scrub cites to a case in our district - our colleague Judge Brown - where, in a footnote, the court noted that the Federal Rules of Civil Procedure require discovery responses

---

[12]Dkt. 86, Exh 1.
[13]610 F.Supp. 695, 698 (N.D. Ill. 1985).
[14]*Board of Educ. of City of Chicago,* 610 F.Supp. at 698.

within 30 days, thus, an objecting attorney should also articulate any objections within those 30 days.[15] We do not disagree that, procedurally, that is correct. Counsel should request additional time if a privilege log is required and not yet prepared within the 30 days. But in this case we believe the EEOC's "delay" in amending its privilege log does not warrant the drastic measure of waiver as asserted by Scrub.

Moving to the substance of the dispute, Scrub argues that the privilege does not apply because: (1) the EEOC is a plaintiff; (2) the privilege does not protect factual material; and (3) the privilege does not bar discovery related to the conciliation process where Scrub was a party. Scrub, however, has waived the first argument as to whether EEOC, as a plaintiff, prohibits reliance on the privilege. Arguments presented for the first time in a reply are waived.[16] Even if it were timely, Scrub cites only to cases outside this Circuit for the proposition that when the agency is the plaintiff, courts favor discovery over privilege.[17] The problem is, in our district the privilege has been applied even where the EEOC is a plaintiff.[18] We conclude that this alone, therefore, does not invalidate the use of the privilege.

Second, Scrub asserts that the privilege does not protect factual material. This is, in fact, true.[19] Scrub contends, however, that EEOC is withholding certain factual information found in the alleged privileged documents and refers to several cases where, after *in camera* reviews, those courts

---

[15]*Hobley v. Chicago Police Commander Burge,* 2003 WL 22682362, *3 (N.D. Ill. Nov. 12, 2003).
[16]*See In re Neopharm, Inc. Securities Litig.,* 2010 WL 1335824, *17 (N.D. Ill. Mar. 31, 2010)(citing *Carter v. Tennant Co.,* 383 F.3d 673, 678 (7th Cir. 2004).
[17]*See E.E.O.C .v. Los Alamos Constructors, Inc.,* 382 F.Supp. 1373, 1386 (D. N.M. 1974)(finding that "government files are not sacrosanct" and "flimsy claims of privilege will not be recognized to further a desire by the EEOC to fight an opponent one of whose hands the EEOC wants to tie behind the opponent's back."); *see also EEOC v. Citizens Bank and Trust Co. of Maryland,* 117 F.R.D. 366, 366 (D. MD. 1987)(noting that the court would be inclined to sustain claims of privilege where the government was not the plaintiff).
[18]*See U.S. E.E.O.C . v. Continental Airlines, Inc.,* 395 F.Supp.2d 738 (N.D. Ill. 2005).
[19]*See Enviro Tech. Int'l, Inc. v. U.S. E.P.A.,* 371 F.3d 370, 375 (7th Cir. 2004).

found "purely statistical" reports, investigator's memoranda containing factual material, and other "severable" factual material to be outside the scope of the privilege and ordered to be produced.[20] Scrub agrees that all predecisional materials, or, documents created prior to the execution of the EEOC's Letter of Determination are protected. Scrub, nonetheless, argues that at least parts of Mr. Rodriguez's investigative memorandum and draft memorandum should be disclosed, even though those would have been created before any letter of determination.[21] Likening this case to *EEOC v. Fina Oil & Chemical Company,* where the Texas district court found that, after an *in camera* review of the investigative report, certain portions of the report reflected "routine agency procedure" and were "in no way revelatory of...the deliberative process," Scrub believes there may be discoverable factual information included in Mr. Rodriguez's report.[22]

Then Scrub asserts that the document EEOC describes as the analysis of Scrub's income and potential liability (labeled in the privilege log as the calculations of gross payroll compiled by EEOC investigator W. Hubbart), as well as a memorandum in which an EEOC statistician calculated the statistical likelihood that Scrub discriminates based on census data (labeled as "Research and Technology Report on Scrub applicant data" in EEOC's privilege log) should also be disclosed.[23] Scrub argues that those calculations are not possibly recommendations or opinions, so the calculations must be factual in nature and discoverable. Here, Scrub again relies on Fifth Circuit opinions where the courts found purely statistical reports, where there were no subjective

---

[20]*See E.E.O.C. v. Fina Oil & Chem. Co.,* 145 F.R.D. 74, 76 (E.D. Tex. 1992)(citing a Fifth Circuit case that found purely statistical reports, absent subjective conclusions, not deliberative in nature); *see also E.E.O.C. Chemisco, Inc.,* 203 F.R.D. 432 (E.D. Mo. 2001)(denying in camera review but ordering documents containing factual material to be produced); *Greene v. Thalhimer's Dep. Store,* 93 F.R.D. 657, 661 (E.D. Va. 1982)(ruling that the purely factual passages contained in the privileged documents should be pulled out, where they "are severable from their context").
[21]*See* dkt 58, Exh. A.
[22]*See* 145 F.R.D. 74, 76 (E.D. Tex. 1992).
[23]EEOC's Resp., Exh 1, Bates # E00074 and E00118-156.

conclusions, not deliberative.[24]

Scrub also argues that handwritten notes by EEOC's investigator, Mr. Rodriguez, cannot all be regarding policy or decisionmaking so, therefore, must be at least partially discoverable. Finally, Scrub points to two additional sets of documents as discoverable: one containing Mr. Rodriguez's mathematical calculations and another containing unknown "Sensitive Information."[25] Essentially, Scrub contends that these documents, on their face, include some factual information and, thus, warrant an *in camera* review by the Court to determine what can yet be discovered.

EEOC responds generally that all of the withheld documents contain analysis, personal impressions or recommendations and, therefore, are protected from disclosure. EEOC then attempts to distinguish the documents at issue here from those described in the case relied on by Scrub, *Fina Oil,* by claiming that the "subjective conclusions" are not easily segregable from "purely factual material."[26] For example, EEOC claims that the documents authored by EEOC's in-house mathematical statistician, Bliss Cartwright, contain evaluations and analyses of applicant shortfall, applicant data, and gross payroll, mixed with facts gleaned from the investigative file and census data. EEOC then further explains that all of Mr. Cartwright's statistical reports include subjective conclusions, which are protected by the government deliberative process privilege. As to Mr. Rodriguez, EEOC asserts that disclosure of the facts in his documents would reveal why he took those facts into consideration.

EEOC also argues that Scrub has failed in its burden to show why the Court should require production of these disputed documents. Once the EEOC has satisfied its threshold burden of

---

[24] *See Fina,* 145 F.R.D. at 76; *see also Pacific Molasses Co. v. N.L.R.B.,* 577 F.2d 1172, 1183 (5th Cir. 1978).
[25] EEOC's Resp., Exh 1, Bates # E000276-281 and E000371-375.
[26] *See Fina,* 145 F.R.D. at 75.

establishing that the privilege applies, which it has here, Scrub has the burden to show a particularized need for the documents.[27] Then the court balances the litigant's need for disclosure against the government's need for secrecy.[28] According to Scrub, its only claim of need for this discovery relates to its claim of *laches* and its belief that EEOC did not timely pursue investigation of the underlying charge in this case. Scrub asserts, therefore, that any document that may disclose whether Mr. Rodriguez was diligently pursuing the investigation in a timely fashion is relevant. Relevance, however, is an insufficient reason for breaching the deliberative process privilege.[29] Scrub must show a "particularized need for the privileged documents that outweighs defendants' interest in not disclosing them."[30]

A showing of relevancy, however, is enough to warrant an *in camera* inspection.[31] Without an *in camera* review of these documents, the Court is only really able to provide guesswork. EEOC, to no surprise, disagrees that the Court should conduct an *in camera* inspection of the documents. EEOC cites to *Chemcentral/Grand Rapids Corporation v. United States Environmental Protection Agency,* where the district court declined to require an *in camera* inspection "just to make sure EPA is telling the truth."[32] In that case, the court found that the plaintiff failed to explain why the documents in dispute even possibly contained undisclosed factual material and, without some evidence that the EPA was lying, the court refused an *in camera* inspection.[33] Though we are similarly inclined to refuse an *in camera* inspection, to truly determine whether disclosure "would

---

[27]*See K.L.,* 964 F.Supp. at 1209 (citing *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993)).
[28]*Id*.
[29]*Id* (citing *Farley,* 11 F.3d at 1390).
[30]*Id.*
[31]*E.E.O.C. v. Stauffer Chem. Co.,* No. 89-2725, 1990 WL 19967, *2 (N.D. Ill. Feb. 27, 1990)(citing *McClelland v. Andrus,* 606 F.2d 1278, 1290 (D.D. Cir. 1979)).
[32]1992 WL 724965, *13 (N.D. Ill. Aug. 20, 1992).
[33]*Id*.

serve only to reveal the evaluative process," which is what the privilege is designed to protect, we see no alternative.[34] As noted by Judge Conlon, "in determining whether a party's claim of need outweighs the government's interest in confidentiality, an *in camera* inspection is usually appropriate."[35] It is evident that in most government deliberative process privilege cases, because facts can be intermixed with analysis, courts take a careful case-by-case analysis of the material sought before making a determination. Here we must do the same.

The final argument we must address is Scrub's claim that the privilege does not bar discovery related to the conciliation process where Scrub was a party, again referring back to section 706(b) of Title VII, which provides that "[n]othing said or done during and as a part of such informal endeavors [ - conference, conciliation, and persuasion - ] may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned."[36] Here Scrub cites to the United States Supreme Court decision in *EEOC v. Associated Dry Goods Corporation*, where the Court interpreted the language in section 706(b).[37] Specifically, the Court discussed the word "public" in the statute, stating that it did not "logically include the parties to the proceedings."[38] Relating to that case, Scrub argues that here, because it participated in the conciliation, it should be permitted discovery of conciliation materials.

EEOC, however, contends that the conciliation privilege outlined in the statute allows EEOC to withhold such materials because, in this case, the charging party has not consented to such

---

[34]*See Fina,* 145 F.R.D. at 75.
[35]*E.E.O.C. v. Stauffer Chem. Co.,* No. 89-2725, 1990 WL 19967, *2 (N.D. Ill. Feb. 27, 1990)(citing *United States v. Bd of Educ.,* 610 F.Supp. 695, 699 (N.D. Ill. 1985)).
[36]42 U.S.C. §2000e-5(b).
[37]449 U.S. 590 (1981).
[38]*Assoc. Dry Goods Corp.,* 449 U.S. at 598.

disclosure.[39] EEOC then cites to *EEOC v. Olsten Staffing Services Corporation,* which only addressed whether a third party could access conciliation documents, not whether the defendant itself could access the documents.[40] More on point, however, the *Olsten* court cited to a Fifth Circuit case, *Branch v. Phillips Petroleum Company,* where the court noted that disclosing details of a plaintiff's charges against an employer could "'undermine the purpose of section 706(b) if potential parties feared that their filings could be the subject of discovery.'"[41] In the *Branch* case, the Fifth Circuit noted that the EEOC's regulations and policies manual "make no exception for disclosure of conciliation materials to opposing parties" (while distinguishing such materials from purely factual information, which, it acknowledged, is discoverable).[42]

Scrub believes *Branch*, and other cases that have barred production of materials to the employer, were simply wrongly decided. It is true that *Branch*, though decided several months after *Associated Dry Goods,* did not cite to the Supreme Court's decision. It nevertheless held that,

> the prospect of disclosure or possible admission into evidence of proposals made during conciliation efforts would tend to inhibit the kind of free and open communication necessary to achieve unlitigated compliance with the requirements of Title VII. Therefore, disclosure of conciliation materials, even to the parties, would discourage negotiated settlement and frustrate the intention of Congress.[43]

This view succinctly refutes Scrub's position. Here, the Fifth Circuit likened the purpose of section 706(b), and the confidentiality provisions therein, to the traditional evidentiary rule making offers

---

[39] 42 U.S.C. § 2000e-5(b)(providing that "[n]othing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.").
[40] 627 F.Supp.2d 972, 975 (W.D. Wis. 2009).
[41] *Olsten Staffing Services Corp.,* 627 F.Supp.2d at 975(citing *Branch v. Phillips Petroleum Co.,* 638 F.2d 873, 880-81 (5th Cir. 1981).
[42] *See Branch,* 638 F.2d at 881.
[43] *Branch,* 638 F.2d at 881.

of compromise and settlement that are inadmissible under Federal Rule of Evidence 408.[44] Here, we do the same. We acknowledge that *Associated Dry Goods* did, in fact, find that disclosure of "the charge" to the charging party itself was intended by the statute (because "the charging party cannot logically be a member of the 'public' to whom disclosure is forbidden...").[45] The Court also found that the "the charge" could not be concealed from the employer, "since the statute also expressly requires [EEOC] to serve notice of the charge upon the respondent within 10 days of its filing."[46] But, like the Fifth Circuit, we cannot interpret the Supreme Court's analysis of disclosure to encompass all communications made during conciliation. We will not, therefore, require EEOC to disclose communications or proposals made during the conciliation process. Again, purely factual material related to the merits of the EEOC charge, however, remain discoverable.

**B.    Scrub's motion to compel documents relating to EEOC communications with potential claimants  [dkt 60]**

This motion relates to certain form letters and questionnaires that EEOC sent out to potential plaintiffs, or, persons it believed may have applied for positions with Scrub. EEOC has already produced to Scrub a copy of the form letter that it sent out and a copy of the blank questionnaire. But Scrub wants all of the completed questionnaires, of which EEOC claims there are over 600, and more arriving daily. EEOC has refused to produce these documents, asserting the attorney-client privilege and the work product privilege.

The questionnaires at issue in this case were sent with a form cover letter, informing the recipient that if he or she believed to have been discriminated against due to race, and would like

---

[44]*Id*; *see also* Fed.R.Evid. 408.
[45]449 U.S. at 598.
[46]*Id*.

to participate in the EEOC's lawsuit, to return the questionnaire.[47] The cover letter also notes that it will be up to the EEOC as to whether the recipient meets the qualifications for inclusion in the case. Then the actual questionnaire requests general information, including name, race, address, dates applied to Scrub and if they were offered a position at Scrub.[48] It should be noted, however, that the first question on the questionnaire is "[i]f you qualify as a class member, do you want the EEOC to represent you?"

The attorney-client privilege is "strictly construed" because it inevitably makes discovery more difficult by preventing the disclosure of often relevant information.[49] The privilege protects communications between an attorney and a client but is limited to circumstances where an attorney is acting as a legal advisor.[50] Communications between the EEOC and individuals for whom the EEOC seeks relief are, however, privileged by *de facto* attorney-client privilege.[51] The privilege may also extend to prospective EEOC claimants.[52]

The essential question here is whether the recipients of the cover letter and questionnaire were prospective EEOC claimants that would be covered by the attorney-client privilege. Scrub presents two main arguments: (1) that the completed questionnaires are not protected, citing to *EEOC v. ABM Industries Inc.*,[53] and; (2) even if the privilege applies, the facts contained in the completed questionnaires must be produced. We will first look to the principle case relied upon by Scrub. In *ABM*, like here, the California district court addressed whether a letter and questionnaire

---

[47]Dkt 60, Scrub's Mt to Compel, exh. F.
[48]Dkt 60, Scrub's Mt to Compel, exh. G.
[49]*In re sulfuric Acid Antitrust Litigation,* 235 F.R.D. 407, 414 (N.D.Ill. 2006).
[50]*In re sulfuric Acid Antitrust Litigation,* 235 F.R.D. at 414.
[51]*See E.E.O.C. v. Tony's Lunge, Inc.,* 2010 WL 1444874, *2 (S.D. Ill. April 9, 2010)(citing *Bauman v. Jacobs Suchard, Inc.,* 136 F.R.D. 460, 461 (N.D. Ill. 1990)).
[52]*E.E.O.C. v. Int'l Profit Associates, Inc.,* 206 F.R.D. 215, 219 (N.D. Ill. 2002).
[53]261 F.R.D. 503, 508 (E.D. Cal. 2009).

sent to "a group of potential claimants (and/or witnesses)" would suffice to create the attorney-client privilege and limit disclosure of the completed questionnaires.[54] The court found that it did not. The court noted that simply because the EEOC brings a Title VII suit does not automatically create the attorney-client privilege across an entire potential class.[55] So the court ultimately concluded that "the EEOC's cover letter and form of questionnaire" were not protected by the attorney-client privilege.[56]

Scrub would like us to follow this same analysis and require production of all of the questionnaires. It is useful to first discuss how, in reaching its conclusion, the *ABM* court interpreted *EEOC v. International Profit Associates, Inc.,* which is a case from our district.[57] The court in *International Profit* found that an attorney-client relationship exists when an individual contacts the EEOC through questionnaires and phone calls.[58] The questionnaires in that case, however, were not at issue. Only the interview notes taken by EEOC attorneys were in dispute.[59] The *ABM* court, therefore, distinguished itself from *International Profit* and noted its disagreement with courts that had found *International Profit* to stand for the proposition that simply contact through a questionnaire would automatically create a privilege. Specifically, the court explained that,

> *International Profit* shows that it was the subsequent contacts (i.e., those occurring after they initially called and/or returned the questionnaires) with the EEOC during which the interviewees expressly affirmed their intention to enter into an attorney-client relationship with the EEOC that established the creation of such a professional relationship.[60]

---

[54]*ABM Indus.,* 261 F.R.D. at 508.
[55]*Id* (citing *EEOC v. Collegiville/Imagineering Ent.,* 2007 WL 158735 at *1 (D.Ariz. 2007)).
[56]*Id.* at 511.
[57]206 F.R.D. 215 (N.D. Ill. 2002).
[58]*ABM Indus.,* 261 F.R.D. at 508, n. 4.
[59]*International Profit Associates, Inc.,* 206 F.R.D. at 218.
[60]*ABM Indus.,* 261 F.R.D. at 508, n. 4.

Another point the *ABM* court made - when it decided not to extend the privilege to the questionnaires - was that the questionnaires at issue "did not promise or intimate in any way that information disclosed in completing the questionnaire would remain confidential."[61] The court found that because the privilege only extended to "legal advice" or communications that "reveal the substance of a client confidence," the particular questionnaire used did not reveal "the kind of information the privilege is designed to protect."[62] Specifically, the questionnaire only sought identifying information, including name, address, age and telephone number, and then asked for limited information on employment with the company and whether the individual had witnessed sexual harassment while working.[63]

Similarly, in *International Profit,* and in this case, the questionnaires also primarily asked for identifying information and dates worked.[64] But more importantly, the EEOC in *International Profit* actually *produced* the completed questionnaires.[65] It was only the interview notes, which were generated because the potential claimants contacted the EEOC via the returned questionnaires or telephone calls, that were in dispute and eventually determined to be covered by the attorney-client privilege. Simply comparing those facts with our case supports Scrub's position to turn over the questionnaires.

But this case falls somewhere in the middle. Like *ABM* and *International Profit,* in this case the questionnaires ask for general identifying information. It could, therefore, be argued that such information is not privileged and the questionnaires should be turned over (as it would seem was

---

[61] *Id.* at 510.
[62] *Id.*
[63] *Id.*
[64] 206 F.R.D. at 217.
[65] *Id.*

done without dispute in *International Profit*). Here, however, the questionnaires also ask if the recipient would like the EEOC to represent them. This adds another layer to the analysis because in *ABM* the questionnaires were missing this "critical" piece.[66] In *ABM* the court stated that there was "no adequate showing that the EEOC's cover letter or questionnaire expressly offered the recipient the EEOC's legal services," yet another reason that the court ruled that the privilege did not extend.[67] The *ABM* court addressed this when it cited to *Bauman v. Jacobs Suchard*,[68] another case in our district where a primary purpose of the letter and questionnaire sent to potential claimants was to ask if they wished to be represented by the EEOC.[69] In *Bauman*, the protection of the attorney-client privilege extended to the completed questionnaires.[70]

This distinction is important, and tips the balance in favor of applying the privilege here. Where the questionnaires are completed by persons seeking legal representation, the privilege extends.[71] "The attorney-client privilege covers communications where 'legal advice of any kind is sought' and is not dependent upon the initiation or contemplation of litigation."[72] An attorney-client relationship is also not tied to actual employment of a lawyer, so Scrub's argument that the questionnaires are not privileged because EEOC did not make a definitive offer to represent potential claimants is unavailing (pointing to EEOC's cover letter that indicates that it will be the EEOC's decision as to whether the recipient meets the qualifications for inclusion in the case).[73]

---

[66]*See* 261 F.R.D. at 508.
[67]*Id.*
[68]136 F.R.D. 460 (N.D. Ill. 1990).
[69]*ABM Indus.,* 261 F.R.D. at 509.
[70]*Id* (discussing the ruling in *Bauman v. Jaconbs Suchard,* 136 F.R.D. 460).
[71]*See Vodak v. City of Chicago,* No. 03-2463, 2004 WL 783051, *4 (N.D. Ill 2004).
[72]*Vodak,* No. 03-2463, 2004 WL 783051 at *4 (citing *U.S. v. White,* 950 F.2d 426, 430 (7th Cir. 1991)).
[73]*See id; see also Westinghouse Elec. Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir. 1978)(holding that the lawyer client relationship begins with the preliminary consultation "with a view to retention of the lawyer, although actual employment does not result.").

This brings us to Scrub's argument that facts contained in EEOC's interview notes must also be disclosed. EEOC argues that interviews with class members and witnesses are protected from disclosure by the work product doctrine. We agree. As was noted above, the court found in *International Profit* that the interview notes generated from the potential claimants' contact with EEOC were covered by the attorney-client privilege.[74] And though not all written material prepared by an attorney "with an eye toward litigation" will necessarily be free from discovery, "it is essential that a lawyer work with a certain degree of privacy."[75] Rule 26(b)(3) of the Federal Rules of Civil Procedure protects work product that reveals an attorney's mental processes. Only after a showing of substantial need will work product be required to be produced, and even then the Rule provides that mental impressions, conclusions, opinions and legal theories shall remain protected from disclosure.[76] The completed questionnaires and any interview notes of communications between prospective class members and EEOC counsel are, therefore, protected from disclosure.[77]

We recognize, however, Scrub's argument that the disclosure of *facts* communicated to an attorney are not protected by the privilege.[78] As was suggested by EEOC, Scrub has now filed additional interrogatories requesting specific facts, one of which remains in dispute and is the subject of EEOC's motion for protective order. Because this argument is better served when discussing the specific interrogatory Scrub has propounded, we will move to that issue.

C.     **EEOC's motion for a protective order [dkt 95]**

---

[74] 206 F.R.D. at 218.
[75] *Hickman v. Taylor,* 329 U.S. 495, 511 (1947).
[76] Fed.R.Civ.Pro. 26(b)(3); *see also Upjohn Co. v. U.S.,* 449 U.S. 383, 400 (1981).
[77] *See International Profit Associates, Inc.,* 206 F.R.D. at 219.
[78] *See U.S.E.E.O.C. v. Bill Heard Chevrolet Corp.*, No. 07-1195, 2009 WL 2489282 (D. Nev. 2009)(noting that "[a]lthough the questionnaires and responses themselves are protected from disclosure, the underlying factual information is not.").

In briefing the above two motions, EEOC noted that instead of seeking certain information from EEOC through the questionnaires and interview notes as a last resort, Scrub was requesting them as a "first resort before exhausting other means of discovery." What EEOC recommended, therefore, was that Scrub try to obtain the facts it was seeking (*e.g.*, information about the nature of class members' claims) through interrogatories. Now Scrub has done so, and EEOC objects to one of those interrogatory requests, Interrogatory Number 7. This interrogatory requests that EEOC:

> State all dates on which you submitted applications for employment with Scrub, the position(s) for which you applied, the manner in which you received, filled out and submitted your application, the person to whom you submitted your application, all meetings and telephone conferences with Scrub employees or agents regarding the application, and any and all of your observations related to Scrub's treatment of you or others at any time on in Scrub's offices.

EEOC contends in its motion that it is willing to provide a complete response to this request with respect to class members that it may call to testify in the liability phase of the trial and with respect to class members for whom it seeks compensatory damages. These two groups constitute approximately, according to EEOC, 150 people. EEOC also provides that it will respond on behalf of all 650 class members to all portions of Interrogatory Number 7, except the portion that asks for "all of your observations related to Scrub's treatment of you or others at any time on in [sic] Scrub's premises" and "all meetings and telephone conferences with Scrub employees." So the dispute is limited to only this portion of the interrogatory. And we need not further address Scrub's argument that the disclosure of facts is required - specifically, its request for information about whether class members were interviewed, when they applied, and when they interviewed - because EEOC intends to, and should, provide such information.

EEOC's objection to providing a response for all 650 class members, as to each of their

observations related to Scrub's treatment of them, and regarding all meetings and telephone conferences, is that it will then have to contact each of these individuals to obtain the information. EEOC argues that doing so would be extremely burdensome and asserts that there is little potential relevance of such information to Scrub's defenses. In other words, EEOC claims that there is no relation between Scrub's treatment of the remaining class members and Scrub's defense that it did not engage in a pattern or practice of failing to hire African-Americans. EEOC, nonetheless, also has offered to respond on behalf of a random sample of class members whom it represents (in addition to class members that it may call to testify in the liability phase of the trial and class members for whom it seeks compensatory damages).

We find this to be an appropriate compromise. As noted by EEOC, it is not required to put on proof with respect to each individual class member. Instead, a pattern or practice of discrimination may be established through statistical evidence.[79] Scrub, however, argues that despite EEOC's ability to put on proof through statistics, Scrub is entitled to sort through the facts EEOC has gathered to choose anecdotes "that tend to undermine the EEOC's case."[80] Scrub is essentially arguing that it does not believe that EEOC has not engaged in individual discovery. In other words, Scrub believes that EEOC is potentially withholding information on class members' experiences with Scrub. The Court is unwilling to make that assumption. The appropriate solution, at this stage, is to require EEOC to respond to the interrogatory in full, as it has agreed to do. But with respect to the disputed portion of the interrogatory, EEOC is to respond on behalf of a random sample of class members, as it had offered to do (in addition to the witnesses and class members for whom it

---

[79] *See Int'l Broth. of Teamsters v. U.S.,* 431 U.S. 324, 329 (1977)(finding that statistical analyses can establish a prima facie case of racial discrimination and employment discrimination).
[80] Scrub's Resp. at 13.

seeks compensatory damages). This limited discovery will allow Scrub to determine, generally, whether the experiences of the other 400 plus EEOC class members (not included in the 150 class member group the EEOC has already agreed to provide responses for) are worth further discovery efforts.

**D.     Conclusion**

As fully outlined above, Scrub's motion to compel documents withheld under claims of privilege is granted in part and denied in part [dkt 58]; Scrub's motion to compel documents relating to EEOC communications with potential claimants is denied [dkt 60], and; EEOC's motion for a protective order is granted in part and denied in part [dkt 95]. EEOC is directed to provide to the Court the necessary documents for *in camera* inspection on or before June 2, 2010.

**IT IS SO ORDERED.**

**ENTERED: May 25, 2010**

　　　　　　　　　　　　　　　　　　　　　　　_____
`                                    UNITED STATES MAGISTRATE JUDGE
                                     Susan E. Cox